_____

**SO ORDERED,**



*Judge Jason D. Woodard*

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.
_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT WILLIAM MULLIN, | ) ) ) | Case No.:   19-12579-JDW |
| Debtor. | ) ) | Chapter 7 |
| | | |
| ROBERT WILLIAM MULLIN, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | A.P. No.:   20-01064-JDW |
| THE UNIVERSITY OF MISSISSIPPI, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the *Motion for Summary Judgment* filed by the University of Mississippi[1] and the *Motion for Summary Judgment* filed by the debtor Robert William Mullin.[2]

The debtor seeks to discharge a student loan as an undue hardship when he has made one voluntary payment in over twenty years, while his household income has been as much as ten times his household expenses. The debtor's motion is due to be denied and the University's motion is due to be granted.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (I), and (O).

### II. FINDINGS OF FACT[3]

The debtor seeks to discharge student loan debt owed to the University.[4] The aggregate loan balance consists of two $1,000.00 student loans made to

---

[1] (A.P. Dkt. # 15).
[2] (A.P. Dkt. # 22). At the hearing, the debtor stated he was unsure whether he intended for his motion to be a motion for summary judgment or a response to the University's motion.
[3] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.
[4] The parties do not dispute that the loans are for student loan debt. (A.P. Dkt. # 1).

2

the debtor in the mid-1990s, plus accrued interest.[5]  The first loan was made on June 17, 1994, in the original principal amount of $1,000.00 under the Federal Perkins Loan Program (the "Perkins loan").[6]  The second loan was made on November 5, 1994, in the original principal amount of $1,000.00 under the George C. McKinstry and Laura B. McKinstry Loan Fund (the "McKinstry loan").[7]  It is uncontroverted that the debtor made one payment of $40.00 on his Perkins loan in April 1999, but has made no other voluntary payments on either loan in the last twenty-two years.[8]  As of May 14, 2021, the debtor owed a total of $5,526.61 for the two loans.[9]

The debtor contends that "based on [his] current income and expenses, the debtor cannot maintain a minimal living standard and repay the loan.  The debtor's sole source of revenue is a monthly Social Security check in the amount of $750.00."[10]  The debtor has admitted, however, that he and his wife have a combined annual gross income of $94,142.00.[11]  They have no dependents, so their household consists of just two members whose monthly expenses total $775.00.[12]  This results in an annual household income that is

---

[5] (A.P. Dkt. # 15, Ex. B).
[6] *Id.*
[7] *Id.*
[8] *Id.* Twice the University received state tax offsets on both loans.  Each time, the debtor disputed the offsets and received refunds from the University.
[9] (A.P. Dkt. # 15, Ex. B).  The debtor has not disputed, in any pleading, the affidavit of Hunter Richardson with regard to either the amount or payments on the student loan.
[10] (A.P. Dkt. # 1).
[11] (A.P. Dkt. # 15, Ex. C).
[12] *Id.*

Case 20-01064-JDW Doc 37 Filed 08/26/21 Entered 08/26/21 15:55:53 Desc Main
Document Page 4 of 14

ten times their annual household expenses.[13] All of these figures were provided by the debtor.[14]

## III. SUMMARY JUDGMENT STANDARD

Rule 56 permits a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The Court must view the pleadings and the facts in the light most favorable to the non-moving party.[16] The moving party bears the initial burden of "identifying parts of the record that it believes demonstrates the absence of a genuine issue of material fact."[17] Alternatively, the moving party may also show "an absence of evidence to support the nonmoving party's case" to succeed at the summary judgment phase.[18] "If the moving party satisfies this burden, 'the burden then shifts to the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

---

[13] The debtor's married, jointly filed tax returns for 2017-2019 show adjusted gross income for the corresponding years as follows:
2017: $67,447.00.
2018: $81,275.00.
2019: $73,005.00.
(A.P. Dkt. # 15, Ex. C).
[14] The University relies on debtor's Answers to Interrogatories and Request for Production (A.P. Dkt. # 15, Ex. C).
[15] Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 applies Fed. R. Civ. P. 56 to adversary proceedings.
[16] *Green v. Life Ins. Co. of No. Am.*, 754 F.3d 324, 329 (5th Cir. 2014).
[17] *Rice v. Cornerstone Hosp. of W. Monroe, L.L.C.*, 674 F. App'x 391, 392 (5th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).
[18] *Celotex*, 477 at 325.

designate specific facts showing that there is a genuine issue for trial.'"[19] Here, the parties have filed cross-motions for summary judgment. The Court applies the standards to each of the motions in turn.

## IV. CONCLUSIONS OF LAW

Student loans are nondischargeable, unless a debtor can show that the debt is an undue hardship on the debtor and his dependents.[20] The Supreme Court of the United States has made clear that "[u]nless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt."[21] "Undue hardship" is not defined by the Bankruptcy Code, but the Court of Appeals for the Fifth Circuit has explained that "[t]he plain meaning of the words chosen by Congress is that student loans are not to be discharged unless requiring repayment would impose intolerable difficulties on the debtor."[22]

The Fifth Circuit has expressly adopted the three-pronged *Brunner* test to determine whether a student loan falls within the undue hardship exception.[23] The *Brunner* test requires a debtor to prove:

---

[19] *Rice*, 674 F. App'x at 392 (quoting *Davis v. Fort Bend Cty.*, 765 F. 3d 480, 484 (5th Cir. 2014)).
[20] 11 U.S.C. § 523(a)(8).
[21] *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004).
[22] *Thomas v. Dept. of Educ.* (*In re Thomas*), 931 F.3d 449, 454 (5th Cir. 2019).
[23] *In re Gerhardt*, 348 F.3d 89, 91 (5th Cir. 2003); *Matter of McCoy*, 810 F. App'x 315, 316 (5th Cir. 2020) (citing the three-part test adopted in *Gerhardt*); *Thomas,* 931 F.3d at 450 ("This court, like the bankruptcy and district courts, is bound by our previous interpretation of the discharge provision in [*Gerhardt*]").

5

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[24]

The debtor bears the ultimate burden of proving all three *Brunner* elements by a preponderance of the evidence.[25] But because this adversary proceeding is at the summary judgment stage, the moving party must carry the original burden of proof.[26]

### A. Debtor's Motion for Summary Judgment

At a hearing on July 28, 2021, the pro se debtor stated he was unsure whether he intended for his pleading to be a motion for summary judgment or a response to the University's motion. If the court considers the pleading as a motion for summary judgment, it is due to be denied.

First, the motion was untimely. The Scheduling Order explicitly required that "all dispositive motions (including motions for summary judgment) shall be filed on or before 5/14/21."[27] The debtor filed his motion May 20.[28]

---

[24] *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).
[25] *In re Justice*, 2016 WL 6956642, at *3 (Bankr. N.D. Miss. Nov. 28, 2016).
[26] *Wynn v. Educ. Credit Corp. (In re Wynn)*, 378 B.R. 140, 147 (Bankr. S.D. Miss. 2007).
[27] (A.P. Dkt. # 9, ¶ 3).
[28] (A.P. Dkt. # 22).

6

Document    Page 7 of 14

Second, the pleading failed to comply with the local rules.[29] Local Rule 7056-1 requires, in pertinent part, that a summary judgment movant shall:

> (i) List and separately number each material fact in the prima facie claim or affirmative defense upon which summary judgment is sought, with the understanding that if the court finds a genuine dispute as to any one of the facts listed, summary judgment will be denied.
> (ii) For each material fact listed, cite the factual authority. (E.g., "Paragraph 3 of Complaint, admitted in Defendant's Answer," "page 12 of John Doe's Deposition," "Defendant's Request for Admission No.4, admitted," "Paragraph 5 of Affidavit of John Doe.")
> (iii) Attach as exhibits to the motion the factual authorities relied upon for establishment of the material facts. (E.g., Supporting Affidavit, extracts of depositions or Requests for Admission, etc. Do not attach entire depositions or pleadings, just the pertinent portions relied upon.)[30]

It also requires that "[e]ach motion for summary judgment must be accompanied by a memorandum brief."[31] The debtor's motion does not comply with Local Rule 7056-1 as it does not list and separately number each material fact in the prima facia claim, no evidence was submitted to support any factual assertion, and the debtor failed to file a brief.

Third, even if the motion had been timely and properly filed, it is due to be denied on the merits. This Court has previously noted that *Brunner*

---

[29] *Propes v. Quarterman*, 573 F.3d 225, 231 (5th Cir. 2009) ("A pro se litigant gets a liberal reading of his pleadings, but the basic procedural obligations still apply").
[30] Miss. Bankr. L. R. 7056-1(1)(A).
[31] Miss. Bankr. L. R. 7056-1(3).

established elements, not factors.[32] "[A]]ll three elements must be proven, and if the 'debtor fails to prove even one of these, the inquiry ends and the student loan cannot be discharged.'"[33] With regard to the first *Brunner* element, the debtor's motion baldly asserts that his "resources are insufficient to maintain a minimal standard of living for himself and repayment would constitute undue hardship, as is clear from [his] statement of monthly expenses."[34] The debtor does not support this assertion with an evidentiary submission. The Fifth Circuit has held that "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[35] The debtor's mere assertion that repayment would constitute an undue hardship is a conclusory fact that fails to support his motion.

The debtor does not address the second or third elements in his motion, and again submitted no evidence that would support a holding in his favor on those elements. The debtor's motion must be denied because he has not even attempted to prove two necessary elements of undue hardship.

---

[32] *In re Justice*, 2016 WL 6956642, at *3.
[33] *Id.* (quoting *In re Salyer*, 348 B.R. 66, 70 (Bankr. M.D. La. 2006)).
[34] (Dkt. # 22, ¶ 1).
[35] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting Federal Practice and Procedure: Civil 2d § 2738 (1983)).

### B. *University's Motion for Summary Judgment*

The University bears the initial burden of showing that there is no dispute of material fact with regard to its motion,[36] or that "there is an absence of evidence to support the [debtor's] claim of undue hardship or. . . present affirmative evidence demonstrating that the debtor will be unable to prove an undue hardship claim at trial."[37] If the University meets its burden, the debtor must then "identify specific evidence in the record to articulate the precise manner in which that evidence supports his or her claim."[38] No dispute of material facts exists here. The University relies significantly on the debtor's own answers to interrogatories in showing that the debtor cannot meet the required *Brunner* elements.

The first factor is whether the debtor can maintain a minimal standard of living while repaying the student loan.

> In determining what is a minimal standard of living, '[d]ebtors cannot satisfy this test 'merely because repayment of [the student loan] would require some major personal or financial sacrifices.' *Gerhardt* demands more than a showing of tight finances: it requires that a debtor prove he cannot afford reasonably necessary living expenses if he is forced to repay his student loans.[39]

---

[36] *Rice*, 674 F. App'x at 392 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986)).
[37] *In re Tollison*, 305 B.R. 656, 659-60 (N.D. Miss. 2004) (citing *In re White*, 243 B.R. 498, 506 (Bankr. N.D. Ala., 1999)).
[38] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[39] *In re Wynn*, 378 B.R. at 148 (quoting *Salyer*, 348 B.R. at 71).

As evidence of the debtor's ability to repay the student loan and still maintain a minimal standard of living, the University submitted the debtor's answers to interrogatories, where he admitted that he and his wife have a combined annual gross income of $94,142.00 and annual household expenses of just $9,300.00.[40] The debtor contends that household income should not be a measurement under the undue hardship test in his case. He argues that his wife's income should not be considered because she is not obligated to repay the loans.[41]

The question is not whether she is obligated to repay the debt, but whether the debtor is able to maintain a minimal standard of living "for [himself] and [his] dependents."[42] This language inherently incorporates the position of the *household* into a court's inquiry. In fact, "[i]t is now well-settled that § 523(a)(8) of the Code requires bankruptcy courts to consider the income of a non-debtor spouse when deciding whether excepting a debtor's student loans from discharge will impose an 'undue hardship' on the debtor."[43] This

---

[40] (A.P. Dkt. # 15, Ex. C).
[41] (Dkt. # 22, ¶ 3).
[42] *Brunner*, 831 F.2d at 396.
[43] *In re Epperson*, No. 17-42001, 2021 WL 810873, at *3 (Bankr. E.D. Tex. Feb. 24, 2021) (citing *Lozada v. Educ. Credit Mgmt. Corp. (In re Lozada)*, 594 B.R. 212, 224 (Bankr. S.D.N.Y. 2018)). *See also Augustin v. U.S. Dep't. of Educ. (In re Augustin)*, 588 B.R. 141, 150 (Bankr. D. Md. 2018); *Wynn*, 378 B.R. at 148; *Barron v. Tex. Guar. Student Loan Corp. (In re Barron)*, 264 B.R. 833, 838 (Bankr. E.D. Tex. 2001)); *In re Dorsey,* No. 13-10831, 2015 WL 9237826, at *1 (Bankr. E.D. La. Dec. 16, 2015) ("the bankruptcy court must consider the debtor's total household income, including not only the debtor's income, but also the income of a non-debtor spouse, live-in companion, life partner, or contributing co-habitant"); *In re Murrell*, 605 B.R. 464, 470 (Bankr. N.D. Ohio 2019) ("case law makes it clear that total household income,

Court must consider the debtor's "actual circumstances and not hypothetical circumstances," which may include assistance from any other source, including spousal income, to determine the debtor's complete financial position.[44]

The federal poverty guidelines provide a meaningful basis for measuring a debtor's financial position.[45] Here, debtor's household income is more than four times the federal poverty level for a household of two.[46] Further, Interrogatory No. 8 required the debtor to "[p]lease identify any and all circumstances you contend exist that indicate you will be unable to maintain a minimal standard of living for a significant portion of the repayment period of your student loan if you are forced to repay [the University] for your student loan."[47] The debtor responded that his "previously noted income and expenses clearly indicate that [the debtor] will be unable to maintain a minimal standard of living for a signification portion of the repayment period of the student loan."[48] In his pleading, the debtor reiterated that his resources are

---

including that of a non-debtor spouse, must be considered in the "minimal standard of living" analysis"); *In re Hlady*, 616 B.R. 257, 271 (Bankr. E.D.N.Y. 2020) ("courts focus on a debtor's household income and expenses to determine what expenses are necessary for the debtor to meet her basic needs, such as food, shelter, clothing, transportation and medical treatment for herself and any dependents before repaying student loan debt").

[44] *Wynn*, 378 B.R. at 147-48.

[45] *See e.g. In re Hart*, 438 B.R. at 412 ("Although the minimal standard of living test does not require a debtor to live at or below the poverty level, the analysis 'begins, and ends,' with the debtor's income when it is between two and three times the poverty level") (internal citations omitted); *In re Gesualdi*, 505 B.R. 330, 340 (Bankr. S.D. Fla. 2013); *Educ. Credit Mgmt. Corp. v. Stanley*, 300 B.R. 813, 818 (N.D.Fla.2003).

[46] 85 Fed. Reg. 3060.; (A.P. Dkt. # 15, Ex. C).

[47] (A.P. Dkt. # 15, Ex. C)

[48] *Id.*

insufficient to maintain a minimal standard of living and repayment would constitute undue hardship, "as is clear from Plaintiff's statement of monthly expenses."[49] As noted before, this is a conclusory fact and where the moving party has met its initial burden, the adverse party "cannot 'rest upon mere allegations' in the pleadings, but must 'identify specific evidence in the record an . . . articulate the precise manner in which that evidence supports his or her claim.'"[50] The evidence shows that the debtor's household income is ten times his household expenses. The University has met its burden on the first element. The debtor relies on his allegation that repayment of the loan would constitute undue hardship in response, despite a showing of undisputed facts that his household income is more than sufficient.

The second *Brunner* element requires "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans."[51] Because the debtor fails to show he cannot maintain a minimal standard of living in the first

---

[49] (A.P. Dkt. # 22, ¶ 1).
[50] *Bank of Am. Nat'l Ass'n v. Stauffer*, 728 F. App'x 412, 412 (5th Cir. 2018) (quoting *Ragas* 136 F.3d at 458 (5th Cir. 1998). *See also Bradley v. Frito-Lay*, 2006 WL 2805317, at *3 (S.D. Miss. Sept. 25, 2006) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Ragas* 136 F.3d at 458 (5th Cir. 1998)) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence").
[51] *Brunner*, 831 F.2d at 396.

12

element, he certainly cannot show the "state of affairs" will continue. In fact, he did not address this element at all.[52]

The third *Brunner* element requires the debtor show that he has made good faith efforts to repay the loan.[53] The good faith standard requires the Court to "consider the Debtor's 'efforts to obtain employment, maximize income, and minimize expenses.'"[54] Effectively, this element attempts to ensure the debtor does "not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control."[55] Here, the debtor offered no evidence of a good faith effort to repay the debt. He has made just one voluntary $40.00 payment since 1994.[56] When asked about his efforts to repay the debt, he stated that he "has sought and failed to find employment that would permit repayment of student loan."[57] There is no evidence the debtor is unable to find employment. There is no evidence the debtor suffers from an incapacitating disability. No evidence has been offered to support the assertion that the debtor sought and failed to find employment

---

[52] *See Wynn*, 378 B.R. at 147 (finding that the Court's inquiry ends when the debtor fails to meet his burden under the first *Brunner* element).
[53] *Brunner* 831 F.2d at 396.
[54] *In re Russ*, 365 B.R. 640, 645 (Bankr. N.D. Tex. 2007) (quoting *In re Frushour*, 433 F.3d 393, 402 (4th Cir.2005)).
[55] *In re McMullin*, 316 B.R. 70, 78 (Bankr. E.D. La. 2004) (internal quotations omitted).
[56] (A.P. Dkt. # 15, Ex. B).
[57] (A.P. Dkt. # 15, Ex. C).

to repay these relatively small loans for more than twenty years. The debtor has not made a good faith effort to repay the loan.

In order to satisfy the *Brunner* test, the debtor must ultimately prove all three elements.[58] Here, the debtor cannot satisfy even one of the three. The University has carried its summary judgment burden, and the debtor has failed "to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[59]

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that the debtor's *Motion for Summary Judgment* is **DENIED,** and the University's *Motion for Summary Judgment* is **GRANTED**.

##END OF OPINION##

---

[58] *In re Justice*, 2016 WL 6956642, at *3 (Bankr. N.D. Miss. Nov. 28, 2016) (quoting *In re Salyer*, 348 B.R. at 70).
[59] *Rice*, 674 F. App'x at 392 (quoting *Davis v. Fort Bend Cty.*, 765 F. 3d 480, 484 (5th Cir. 2014)).